UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DUARNIS PEREZ,

               Petitioner,

     -against-                           1:05-CV-1294
                                            (LEK)

UNITED STATES OF AMERICA,

               Respondent.

_____

## MEMORANDUM - DECISION AND ORDER[1]

     Presently before the Court is a petition and supporting documentation for a writ of habeas corpus filed by Duarnis Perez ("Perez" or "Petitioner"), pursuant to 28 U.S.C. § 2255 ("§ 2255 petition"). See Dkt. Nos. 1, 3. For the following reasons, the petition is granted.

## I. BACKGROUND

     On July 5, 1996, Perez was deported to the Dominican Republic after he was convicted of, and on the basis of, an aggravated felony, specifically, the manufacture and delivery of heroin. Plea Tr. (Case No. 00-CR-266, Dkt. No. 19) at 15. At the time of his conviction, Perez and the Government believed that Perez was a citizen of the Dominican Republic and, therefore, an alien. Id. In 2000, Perez was arrested in Rouse's Point, New York, and pleaded guilty to one count of illegal reentry after deportation pursuant to 8 U.S.C. § 1326.[2] On September 27, 2000,

_____

[1] For printed publication by the Federal Reporters.

[2] Perez states that he has waived all collateral remedies in his plea agreement. Petr.'s Mem. No. 1 (Dkt. No. 1) at 3. He is incorrect. In his plea agreement, Perez only waived his rights, pursuant to 18 U.S.C. § 3742, to appeal any sentence of imprisonment of ninety-six (96) months or less. Plea Agr. (Case No. 00-

this Court sentenced Perez to incarceration for a term of fifty-seven (57) months followed by

supervised release for a term of three (3) years.  Petr.'s Mem. No. 1[3] (Dkt. No. 1, Ex. B).  Perez

appealed his sentence arguing that his prior conviction, which significantly increased the

maximum guideline sentence, is an element of the crime that should have been charged in the

information.  The Second Circuit, however, rejected Perez's argument and affirmed this Court's

decision on March 28, 2001.  See Summ. Order (Case No. 00-CR-266, Dkt. No. 23).

On April 10, 2004, after serving the entire incarcerative portion of his sentence–that is,

after spending fifty-seven months in prison–Perez met with a representative of Immigration and

Customs Enforcement ("ICE") to commence his deportation proceedings.[4]  At this meeting, the

ICE representative informed Perez that he was, in fact, a United States citizen and, therefore,

could not be deported.  Petr.'s Aff. (Dkt. No. 3) at ¶¶ 6, 17.  In effect, Perez was notified that he

had been wrongfully deported in 1996 and, thereafter, wrongfully incarcerated for illegal reentry.

Soon after, USCIS issued Perez a Certificate of Citizenship dated July 2, 2004.  Petr.'s Mem. No.

---

CR-266, Dkt. No. 10) at 11.

[3] Perez initially filed a motion for a writ of error coram nobis.  Thereafter, Perez, pursuant to instructions from the Court, recharacterized his motion as a habeas petition, in accordance with 28 U.S.C. § 2255.  See, infra, p. 3.  Therefore, the Court refers to the memorandum of law in support of the writ of coram nobis as "Petr.'s Mem. No. 1" and the memorandum of law in support of the writ of habeas corpus as "Petr.'s Mem. No. 2".

[4] In his motions, memoranda and affidavit, Petitioner states that a representative from the Immigration and Naturalization Services ("INS") informed him, on April 10, 2004, that he was a United States citizen.  However, on March 1, 2003, the INS transitioned into the Department of Homeland Security and was divided into three separate agencies: the United States Citizenship and Immigration Services ("USCIS"), the United States Immigration and Customs Enforcement, and the United States Customs and Border Protection.  Now, the USCIS is responsible for only the administration of immigration services, including record keeping services, and the ICE is responsible for investigating and enforcing immigration laws.  Representatives from ICE conduct deportation proceedings for convicted aliens after their incarceration is complete.  Therefore, an ICE agent, and not an INS agent, informed Perez that he was a United States citizen on April 10, 2004.

1 (Dkt. No. 1, Ex. A).

Unbeknownst to him, Perez automatically had become a naturalized United States citizen on April 13, 1988, derivatively through his mother's successful naturalization.[5]  Petr.'s Mem. No. 1 (Dkt. No. 1); Petr.'s Aff. (Dkt. No. 3) at ¶¶ 7, 12.  Prior to his meeting with the ICE representative, Perez was not notified, in any manner, that he was a naturalized citizen; he had received no documentation concerning his citizenship status.  Moreover, none of the attorneys representing him in his initial deportation proceeding or his illegal reentry proceedings suggested to him that he may be a United States citizen.  Petr.'s Aff. (Dkt. No. 3) at ¶¶ 7-10.  Even his mother did not know that he was a United States citizen.  Petr.'s Mem. No. 2 (Dkt. No. 3) at 3 n. 1.

In the middle of 2003, Perez retained Emily Viziri, Esq., as counsel to represent him in his post-incarceration deportation proceedings.  In discussing his case with Viziri, the possibility that Perez was a United States citizen was raised; but, after the possibility was raised, Viziri neither provided further advice on, nor secured any proof of, Perez's citizenship status.  Petr.'s Aff. (Dkt. No. 3) at ¶¶ 14-16.

On January 13, 2005, Perez filed a petition for a writ of error coram nobis to vacate his conviction in light of the newly discovered fact that he is a United States citizen.  Petr.'s Mot. (Dkt. No. 1).  On May 25, 2005, this Court ordered that Perez recharacterize his application as one for a writ of habeas corpus, pursuant to 28 U.S.C. § 2255, because he is still in the custody of

---

[5]  In 1988, when Perez's mother received citizenship, 8 U.S.C. § 1432 provided that a child born outside the United States automatically became a citizen when the following three conditions were present: (1) the parent with sole custody of the child became a United States citizen; (2) the child was under sixteen years of age; (3) the child was lawfully residing in the United States.  At the time his mother received citizenship, Perez was fifteen years old and was legally residing in the United States, and his mother had sole custody of him.  He, therefore, automatically became a United States citizen on April 13, 1988.

the United States by virtue of his pending supervised release.[6]  On October 17, 2005, Perez filed

a proper § 2255 petition requesting that the Court vacate his conviction and, in turn, the

remainder of his sentence–specifically, his term of supervised release. Petr.'s Mem. No. 2 (Dkt.

No. 3).  The Government has opposed this petition.  Govt.'s Mem. (Dkt. No. 5).

## II. DISCUSSION

A.      *Petitioner is not Time Barred from Seeking Relief*

        Before the Court can address the claims brought in the instant § 2255 petition, the Court

must first determine whether Petitioner is time barred from raising these claims.  Pursuant to the

Antiterrorism and Effective Death Penalty Act ("AEDPA"), there is a one-year statute of

limitations for filing a § 2255 petition.  This statute of limitations begins to run from the latest of:

> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental
> action in violation of the Constitution or laws of the United States is removed, if
> the movant was prevented from making a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme
> Court, if that right has been newly recognized by the Supreme Court and made
> retroactively applicable on collateral review; or
> (4) the date on which the facts supporting the claim or claims presented could have
> been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

        In the instant case, Petitioner argues that the statute of limitations began to run from the

---

[6]  A writ of error coram nobis can only be granted to federal prisoners that have completed their entire
sentence and are no longer in the custody of the United States.  Fleming v. United States, 146 F.3d 88, 89-
90 (2d Cir. 1998).  Petitioners under federal supervised release are considered to be in the custody of the
United States and are, therefore, precluded from receiving relief through a writ of error coram nobis.
United States v. Pregent, 190 F.3d 279, 283 (4th Cir. 1999) (citing Maleng v. Cook, 490 U.S. 488 (1989)).
A writ of habeas corpus, however, is available to prisoners that are still in the custody of the United States.
28 U.S.C. § 2241(c)(1).  Therefore, in the instant case, Perez, who is still under supervised release, can only
move the Court to vacate his conviction by moving for a writ of habeas corpus, not by a writ of error coram
nobis.

date on which he discovered that he was, in fact, a United States citizen–that is, the date on which the fact supporting his current § 2255 claim was discovered.  Petr.'s Mem. No. 2 (Dkt. No. 3) at 2.  Petitioner contends that, in exercising due diligence, the earliest date on which he was able to discover that he was a United States citizen was on April 10, 2004, when the ICE representative informed him of his citizenship status.  Id.  Therefore, according to Petitioner, his petition, which was initially filed on January 13, 2005, is timely since it was filed within one-year of April 10, 2004.

The Government, however, argues that Petitioner is barred from seeking relief because he could have discovered, through the exercise of due diligence, that he was a United States citizen–specifically contending that Petitioner had the ability and, therefore, the responsibility to discover his citizenship status–prior to the judgment of his conviction becoming final, or his meeting with the ICE agent on April 10, 2004.[7]  Govt.'s Mem. (Dkt. No. 5) at 3, 5.  Nonetheless, as the Second Circuit has held, "the statute does not require the maximum feasible diligence," but, rather, only reasonable diligence.  Wims v. United States, 225 F.3d 186, 190  (2d Cir. 2000).  That is, even if it was possible for a petitioner to discover facts or evidence relevant to his defense, the petitioner need not actually discover those facts or evidence to exercise due diligence so long as the petitioner reasonably pursued discovering all relevant evidence concerning his defense.

---

[7]  The Government incorrectly treated 28 U.S.C. § 2255(4) as providing the basis for tolling the statute of limitations, that is, for extending the limitations period.  Properly interpreted, § 2255(4) actually defines the time at which the statute of limitations begins to run; it resets the start of the limitations period to the date on which a new material fact is discovered.  Wims v. United States, 225 F.3d 186, 190 (2d Cir. 2000).  Nonetheless, the Government's claim that Petitioner had ample opportunity to discover his citizenship status before his conviction became final is, still, relevant in determining when the statute of limitations actually begins to run.

The Court believes that, though it may have been possible for Petitioner to have discovered his citizenship status prior to the date on which his conviction became final, it was not entirely unreasonable for him not to have done so.  Petitioner did not receive any notification that he had automatically become a citizen in 1988; it was not until his meeting with the ICE agent that he was given any indication that he was a United States citizen.  Prior to the meeting, he did not take any oath or receive any documentation from the Government.  Moreover, none of Petitioner's attorneys, in any of his criminal proceedings, advised him that he was possibly a citizen.  Even Petitioner's mother told him and his lawyers that Petitioner was not a United States citizen–a statement that Petitioner claims his mother now regrets.  Petr.'s Mem. No. 2 (Dkt. No. 3) at 3 n. 1.

The Court, more importantly, finds that it was not unreasonable for Petitioner, once he had already been deported, to assume that he was not a United States citizen.  The Second Circuit has presumed that "deportation itself is sufficient to impress upon the mind of the deportee that return is forbidden."  United States v. Torres-Eschavarria, 129 F.3d 692, 698 (2d Cir. 1997) (holding that a deportee found in the United States unless he receives the Attorney General's permission is presumed to have an intent to reenter unlawfully).  That is, when a person is deported he is, in effect, given notice that he is barred from reentering the country without explicit permission from the Attorney General.  Moreover, a United States citizen cannot be barred from reentering the country.  United States v. Wong Kim Ark, 169 U.S. 649, 653 (1898) (holding that the petitioner, of Chinese descent, could not be barred from entering the country because he was born in the United States and is, therefore, a United States citizen).  It follows, then, that a person who is lawfully barred from reentering the United States cannot be a United

6

States citizen.  Deportation is, in effect, notice, by the Government, to the deportee that he is not a United States citizen.  A deportee is, therefore, constructively notified by the INS or, now, by the Department of Homeland Security that he is not a citizen.

The Court finds that it is not unreasonable to rely on the INS's constructive notice via deportation.  In the instant case, Petitioner was deported in 1996 pursuant to 8 U.S.C. § 1227(a)(2), which only subjects aliens to deportation.  The Court finds that the statute of limitations did not begin until Petitioner was informed of his citizenship status by the ICE agent on April 10, 2004.  As a result, the instant petition, which was filed on January 13, 2005, is timely.

B.      *Petitioner May Collaterally Attack His Guilty Plea*

A guilty plea is considered an admission of all the elements of a crime.  By pleading guilty, a defendant concedes to the veracity of the facts that constitute the crime so that, ordinarily, "a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked."  Mabry v. Johnson, 467 U.S. 504, 508 (1984).  One exception, *inter alia*, is when a petitioner is able to establish actual innocence in light of newly discovered evidence.  Fountain v. United States, 357 F.3d 250, 255 (2d Cir. 2004).  To show actual innocence, a petitioner must prove that he is factually innocent, not by merely showing legal insufficiency.  Bousley v. United States, 523 U.S. 614, 623 (1998).  That is, the petitioner must prove, in light of new, reliable evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."  Schlup v. Delo, 513 U.S. 298, 327 (1995).  Because the actual innocence determination is based on an assessment of fact, the Government may rebut an actual innocence claim using "any admissible

7

evidence of petitioner's guilt even if that evidence was not presented during petitioner's plea colloquy." Fountain, 357 F.3d at 255 (quoting Bousley, 523 U.S. at 623-24).  In sum, a petitioner may challenge his guilty plea if, in light of all new evidence provided by both the petitioner and the Government, the petitioner can show that a reasonable juror would have a reasonable doubt as to his guilt.

In the instant case, Petitioner's conviction for illegal reentry after deportation rests on the facts to which he admitted in his guilty plea.  The elements to prove an illegal reentry pertinent to Petitioner are that: (1) the accused is an alien; (2) the accused has been previously deported; (3) the accused was found in the United States; and (4) the accused required consent of the Attorney General to reenter the United States and did not obtain the consent of the Attorney General prior to his reentry.  8 U.S.C. § 1326(1)-(2).  In open court, Petitioner admitted that: (1) he was a citizen of the Dominican Republic; (2) he was previously deported pursuant to an aggravated felony conviction; (3) he was found at Rouse's Point, New York, where he attempted to reenter the United States from Canada; and (4) he did not have permission from the Attorney General to reenter the United States after he was deported.  Plea Tr. (Case No. 00-CR-266, Dkt. No. 19) at 14-17.  Therefore, in order to challenge the factual basis on which he was convicted, Petitioner must establish actual innocence–he must show that, in light of new evidence, no reasonable juror could still find him guilty beyond a reasonable doubt.

In support of his actual innocence claim, Petitioner advances his Certificate of Citizenship as newly discovered evidence to prove that he is, in fact, a United States citizen.  Petr.'s Mem. No. 1 (Dkt. No. 1, Ex. A).  Because both Petitioner and the prosecutor were unaware of this evidence when Petitioner pleaded guilty, the Court finds that Petitioner's

Certificate of Citizenship properly serves as new evidence to support his actual innocence claim.

The Government does not dispute Petitioner's citizenship status or posit any new evidence to further support a finding of guilt under 8 U.S.C. § 1326.  In light of his Certificate of Citizenship, the Court finds that Petitioner was indeed a citizen at the time of his conviction for illegal reentry.  Thus, the first requisite element of a conviction under 8 U.S.C. § 1326–that the accused be an alien–is not satisfied.  As a result, the Court finds that no reasonable juror could find him guilty of illegal reentry after deportation.  Because he has established actual innocence, Petitioner may advance a § 2255 petition to challenge his guilty plea.

C.      *Petitioner's Procedural Default is Excused*

A prisoner must make all of his defense claims in his trial or on direct appeal of his conviction so that the government has ample opportunity to address them.  Any claims not raised on direct appeal are, in general, procedurally defaulted and, therefore, barred from being advanced as the grounds for a § 2255 petition.  Bousley, 523 U.S. at 622; Murray v. Carrier, 477 U.S. 478, 485 (1986).  This rule also applies to situations in which the petitioner cannot make an appeal because he has, in a plea agreement, waived his right to appeal.  United States v. Pipitone, 67 F.3d 34, 39 (2d Cir. 1995) (citing United States v. Jones, No. 94-6209, 1995 WL 321263, at *1 (4th Cir. May 30, 1995)).

The Supreme Court has, however, recognized a miscarriage-of-justice exception to the general bar.  Carrier, 477 U.S. at 495.  The Court explains that "where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."  Id. at

496.  See also Spence v. Superintendent, Great Meadow Corr. Fac., 219 F.3d 162, 171 (2d Cir.

2000) (holding that demonstrating actual innocence excuses procedural default in noncapital

cases); *supra*, pp. 7-8 (standard for actual innocence).

In the present case, since Petitioner appealed his sentence, but not his actual conviction,

he has procedurally defaulted on the claims he advances in the instant § 2255 petition.

Specifically, he failed to raise in his direct appeal the fact that he is a United States citizen and

the contention that the Government failed to inform him of his citizenship status when it

prosecuted him for illegal reentry.  Therefore, under the general rule, Petitioner's § 2255 petition

has been procedurally defaulted.  Nonetheless, the Court may review the petition on its merits

because Petitioner has established his actual innocence, as the Court previously noted, based on

newly discovered evidence.  See, *supra*, p. 8-9.


D.    *Petitioner's Sentence was Imposed in Violation of the Constitution*

A federal prisoner may move the court that sentenced him to vacate his conviction and

sentence when imposed in violation of the Constitution or laws of the United States.  See 28

U.S.C. § 2255; United States v. Bagley, 473 U.S. 667 (1985).  The grounds for seeking relief

pursuant to 28 U.S.C. § 2255 are narrowly construed so that "the writ of habeas corpus will not

be allowed to do service for an appeal."  Sunal v. Large, 332 U.S. 174, 178 (1947).  That is, a

habeas petition does not reexamine evidence to determine whether a prisoner is guilty or

innocent.  Instead, on habeas review, the court ensures that the petitioner's conviction and

imprisonment was not the result of a constitutional violation.  Therefore, freestanding claims of

actual innocence, in light of new evidence, cannot serve as grounds for habeas relief.  Herrera v.

Collins, 506 U.S. 390, 400 (1993).  To receive habeas relief, a petitioner must show that his

conviction is the result of a constitutional violation.  Petitioner argues that, because the

Government was aware or, at least, should have been aware that he was a United States citizen,

the Government violated his constitutional right to due process by failing to disclose his

citizenship status to him.  Petr.'s Mot. (Dkt. No. 1) at 2.

    The criminal justice system of the United States fundamentally serves to ensure that "the

guilty be convicted and the innocent go free."  Herring v. New York, 422 U.S. 853, 862 (1975).

The Government's interest in a criminal prosecution, therefore, "is not that it shall win a case,

but that justice shall be done."  Berger v. United States, 295 U.S. 78, 88 (1935).  In accordance

with their duty to exact justice, United States v. Tomaiolo, 286 F.2d 568, 569 (2d Cir. 1961)

(quoting Berger, 295 U.S. at 88), United States Attorneys, at times, have declined to oppose

petitions to correct clear errors.  See Serwa v. United States, No. 96-MJ-199 (Govt.'s Motion,

Dkt. No. 4) (the Government actually moved the Court to dismiss the complaint and vacate the

prisoner's conviction in the interest of justice); United States v. Cox, No. 94-3500-EEO, 1995

WL 351406, at *2 (D. Kan. May 5, 1995).  Yet, in the instant case, the Government opposes the

§ 2255 petition while simultaneously conceding that Petitioner is a United States citizen and,

therefore, could not be properly prosecuted pursuant to 8 U.S.C. § 1326.  See, infra, pp. 14-15.

In effect, the Government is arguing that an innocent man who was wrongly convicted should not

be released from the custody of the United States.  Moreover, the Government, in opposing a

petition that would correct the wrongful conviction of an innocent man, has wasted limited

judicial and prosecutorial resources.  Because the prosecutor is the representative of the

Government in a criminal prosecution, his role is more than a mere adversary; he is charged with

11

ensuring that an accused receive due process–that is, a fair trial.

The Supreme Court has, therefore, established that it is a violation of the accused's constitutional right to due process for the Government, in good faith or bad in bad faith, to withhold any material, exculpatory evidence whether or not the defendant explicitly requests this evidence.  See Brady v. Maryland, 373 U.S. 83, 87 (1963) (holding that the prosecution's suppression of requested evidence favorable to the defendant violates due process, notwithstanding the prosecution's good faith); United States v. Agurs, 427 U.S. 97, 106 (1976) (holding that prosecution's failure to disclose material, exculpatory evidence, even if it is not requested by the defendant, constitutes a due process violation); Bagley, 473 U.S. at 684 (holding that prosecution's failure to disclose evidence, which, if admitted, would have had a reasonable probability of resulting in a different verdict, is grounds for granting a § 2255 petition).

The prosecutor, moreover, is obligated to disclose any material, exculpatory information that is in its constructive possession–that is, any information that is in the possession of an "arm of the prosecution."  United States v. Morell, 524 F.2d 550, 555 (2d Cir. 1975).  An "arm of the prosecution" is any government agent or agency that investigates and provides information specifically aimed at prosecuting a particular accused.[8]  Thus, the Court may impute, to the prosecutor, the knowledge of any exculpatory evidence that is known to any government agent or

---

[8]  The prosecutor is not responsible to disclose exculpatory information that the prosecutor does not know exists, which is only in the possession of a government agent or agency that is not directly involved in the prosecution of the criminal case.  Such a requirement would "condemn the prosecution of criminal cases to a state of paralysis."  United States v. Avellino, 136 F.3d 249, 255 (2d Cir. 1998) (quoting United States v. Gambino, 835 F. Supp. 74, 95 (E.D.N.Y. 1993)).  See also Pina v. Henderson, 752 F.2d 47 (2d Cir. 1985) (holding that information possessed by a parole officer could not be imputed to the prosecutor because the Parole Office did not serve, in this case, as a investigatorial agency and the parole officer was not a prosecutorial investigator in the prosecution of the accused).  Instead, only agencies that actively contributed to the criminal investigation of a particular accused are considered to be an arm of the prosecution of that defendant.

agency involved in the prosecution of a criminal case.

In <u>Kyles v. Whitley</u>, 514 U.S. 419, 438 (1995), the prosecution of the defendant, who was accused of first degree murder, primarily rested on the testimony of a police informant. The police officers who investigated the case were aware of certain facts that affected the credibility of the informant. The investigators, however, did not reveal that impeachment information to the prosecutor until the defendant was convicted. The prosecution, as a result, failed to disclose this potentially exculpatory information to the defense. The Court held that the prosecutor, though unaware of the evidence during the trial, was still responsible for disclosing information concerning the credibility of certain witnesses. The Court reasoned that the prosecutor had the ability to create procedures and regulations to ensure that government agents provided the prosecutor with all information that is possibly exculpatory. <u>Kyles</u>, 514 U.S. at 438 (quoting <u>Giglio v. United States</u>, 405 U.S. 150, 154 (1972)).

As the Government's representative, the prosecutor has the responsibility to be aware of all information in the possession of the Government and ensure that this information, if favorable to the defendant, is disclosed to the defense. Otherwise, government agents and agencies would be encouraged to withhold exculpatory evidence from the prosecutor in order to avoid disclosing such information to the defense. Such a system would be manifestly unjust since exculpatory information possessed solely by a government agent or agency would never come to light. Innocent defendants could face conviction since such defendants would not have access to the information that would exonerate them.

Not all acts of withholding exculpatory evidence, however, are grounds for granting a § 2255 petition. First, a prosecutor is not obligated to disclose, to the defendant, information that

"the defendant or his attorney either knew, or should have known." <u>United States v. Gonzalez</u>, 110 F.3d 936, 944 (2d Cir. 1997). Instead, the prosecutor must disclose exculpatory information, to the defense, that is in the prosecutor's actual or constructive possession only if it is reasonable for the defendant not to know that exculpatory information.

Second, only when undisclosed, exculpatory evidence is *material* is an accused's right to due process violated. <u>Brady</u>, 373 U.S. at 87. Generally, in a situation where a prosecutor fails to disclose exculpatory information, which was not known to the prosecutor, but was in the constructive possession of the prosecutor, the withheld information is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>Orena v. United States</u>, 956 F. Supp. 1071, 1092 (E.D.N.Y. 1997) (quoting <u>Bagley</u>, 473 U.S. at 682). In the context of a guilty plea under this same circumstance, the test for materiality is "whether there is a reasonable probability that but for the failure to produce such information the defendant would not have entered the plea but instead would have insisted on going to trial." <u>Tate v. Wood</u>, 963 F.2d 20, 24 (2d Cir. 1992). That is, withheld evidence is deemed to be material only if, had the evidence been properly disclosed, competent counsel would have, with reasonable probability, advised the accused to plead not guilty. <u>Miller v. Angliker</u>, 848 F.2d 1312, 1322 (2d Cir. 1988). No competent defense attorney would advise his client to plead guilty to a charge on which the Government would be unable to convict the accused. Therefore, if the prosecution's failure to disclose evidence could have, with reasonable probability, resulted in an inability to convict the accused, that is grounds for vacating a conviction pursuant to 28 U.S.C. § 2255.

In the instant case, Petitioner's constitutional right to due process was violated when the

14

Government failed to disclose to him, upon prosecuting him for illegal reentry, that he was, in fact, a United States citizen.  The Government concedes that Petitioner "does appear to have acquired U.S. citizenship" prior to his conviction for illegal reentry.  Govt.'s Mem. (Dkt. No. 5) at 1.  Further, as the Court previously noted, it was not unreasonable for Petitioner not to have known that he was United States citizen.  See, *supra*, pp. 6-7.  As a United States citizen, Petitioner is not the proper subject to be convicted pursuant to 8 U.S.C. § 1326 rendering the Government unable to prosecute Petitioner for illegal reentry.  Thus, the evidence supporting the fact that Petitioner is a United States citizen, if improperly withheld, is material.

  The Government had constructive knowledge of the fact that Petitioner was a United States citizen when he was prosecuted pursuant to 8 U.S.C. § 1326.  In 2000, when the Government prosecuted Petitioner for illegal reentry, the INS was the government agency that handled legal and illegal immigration and naturalization.  The INS's responsibilities included, *inter alia*, maintaining records of naturalization and investigating cases of illegal immigration to prosecute illegal immigrants.[9]  Petitioner argues that the INS had a record of his citizenship status when the Government prosecuted him for illegal reentry.  Petr.'s Mem. No. 1 (Dkt. No. 1) at 3. The Government provides no evidence to the contrary.  Moreover, the ICE agent, in 2004, indicated to Petitioner that the USCIS had a record of his naturalization.  Because he was naturalized along with his mother in 1988, the record must have been created at that time. Therefore, the Court finds that the INS had, in its possession, a record of Petitioner's citizenship

---

[9] Again, since the INS transitioned into the Department of Homeland Security, the various functions of the INS have been divided into three separate government agencies under the supervision of the Department of Homeland Security.  Under the new bureaucratic structure, the USCIS may, or may not, be considered an arm of the prosecution since the prosecutorial functions are in the province of the ICE while the records are kept by the USCIS.  In the present case, the Court is only concerned with whether, under the old structure, the INS is considered part of the prosecution team.

status when the Government prosecuted Petitioner for illegal reentry.

The INS's knowledge of Petitioner's citizenship status may be imputed to the prosecutor because the INS acted as a part of the prosecution team.  The INS provided the Government with the information that Petitioner had been previously deported in 1996 and was, therefore, illegally in the United States in 2000.  Plea Tr. (Case No. 00-CR-266, Dkt. No. 19) at 15-16.  The INS also assisted the Government in prosecuting Petitioner by investigating Petitioner's immigration status and providing the information to the prosecutor for the sole purpose of prosecuting Petitioner for illegal reentry–thereby acting as an arm of the prosecution in the case against Petitioner.

In sum, the Government was obligated to disclose to Petitioner that he was a United States citizen because (1) that information was in the constructive possession of the prosecutor and (2) that information was material.  Because the Government did not disclose the material, exculpatory information to him, Petitioner suffered a constitutional due process violation.  Thus, the Court finds that Petitioner has been imprisoned as a result of a constitutional violation.

Alternatively, Petitioner makes the claim that his conviction and sentence should be vacated because, as a United States citizen, Petitioner cannot be convicted of illegal reentry. Petr.'s Mem. No. 2 (Dkt. No. 3) at 1.  United States citizenship entails the privilege to reenter and remain in the country and the immunity from conviction for engaging in such activities.  See Acosta v. Gaffney, 413 F. Supp. 827, 832 (D.N.J. 1976) ("No act of any branch of government may deny to any citizen the full scope of privileges and immunities inherent in United States citizenship.  Central to all of those rights, of course, is the right to remain."); Lopez v. Franklin,

16

427 F. Supp. 345, 349 (E.D. Mich. 1977) ("He faces no quotas or entry restrictions because he is not an alien but a native-born citizen of the United States.").  To deny a United States citizen the privilege to reenter and remain in the United States, and the immunity from being convicted for doing so, would be "repugnant to the Constitution."  Acosta, 413 F. Supp. at 349.  It is a constitutional violation to imprison a United States citizen for reentering the United States.

In the present case, because Petitioner has established that he is a United States citizen, it is a constitutional violation to convict him for reentering the United States.  As a result, the Court finds that Petitioner's conviction and, in turn, his sentence should be vacated pursuant to 28 U.S.C. § 2255.

### III. CONCLUSION

Accordingly, it is hereby

**ORDERED** that Petitioner's Motion and supporting documentation, pursuant to 28 U.S.C. § 2255, to vacate and set aside his conviction and sentence (Dkt. Nos. 1, 3) is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court serve a copy of this Order on all parties by regular mail.

**IT IS SO ORDERED**.

Dated:   August 15, 2006
         Albany, New York

Lawrence E. Kahn
U.S. District Judge

17